ORIGINAL

Receipt No. 066269

IN THE UNITED STATES FEDERAL COURT OF CLAIMS

FILED
MAR 12 2007
U.S. COURT OF FEDERAL CLAIMS

J.O.A. CONSTRUCTION CO., INC.
A Michigan corporation

Plaintiff

V

THE UNITED STATES.

Defendant

Case Number:
Judge

07-160 C

JOHN K. GRYLLS P13350
Attorney for Plaintiff
JOHN K. GRYLLS, P.C.
18430 Mack Avenue
Grosse Pointe Farms, MI 48236
(313) 885-0123
(313) 886-7699 fax
jkgrylls@comcast.net

# COMPLAINT

Plaintiff, J.O.A. CONSTRUCTION CO., INC., by and through its attorneys, complaining of Defendant states as follows:

1. That Plaintiff, J.O.A. CONSTRUCTION CO., INC. (JOA) is a Michigan corporation authorized to do business in the State of Michigan as a general contractor.

2. That all times material hereto, Plaintiff was and continues to be engages in business in the construction industry as a general contractor for commercial and institutional construction projects.

3. That Defendant, UNITED STATES (United States) and the Division of the United States Department of Defense, organized and existing under the laws of the United States entered into a contract with Plaintiff.

## JURISDICTIONAL ALLEGATIONS

4. That this dispute arises out of a certain contract for construction services between Plaintiff and the United States, Department of the Army and the Air Force, National Guard Bureau, where Plaintiff was the design builder, general contractor on the project known as:

   Contract No: DAHA20-00-D-508/0016
   Total Army School System
   Fort Custer, Augusta, Michigan

   hereinafter referred to as the Project

5. That contract number DAHA20-00-D-508/0016 was awarded to Plaintiff on February 20, 2003 in the total amount of $13,235,200.00.

6. That because of the voluminous nature of the contract documents, and because Defendant United States is in possession of same, they are not attached hereto, but are hereby referenced and adopted as a part of this complaint.

7. That pursuant to the terms of the contract, disputes arising out of the work are subject to the Contract Disputes Act of 1978 (41 USC 601 et esq.), hereinafter referred to as the CDA.

8. That pursuant to 41 USC 609, Plaintiff may sue on a Contracting Officer's final decision in this court within 12 months from the date of the receipt of the final decision of the contracting officer.

9. That this suit is within the jurisdiction of this court.

## COUNT 1

10. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

11. That on February 23, 2007 the Contracting Officer submitted its Notice of Termination for Default, terminating the referenced contract for default (Exhibit 1).

12. That the Contracting Officer stated that the Termination for Default was in accordance with the provisions of the FAR's 49.402-3(f) and pursuant to FAR 52.249-10.

13. That Plaintiff JOA had performed the contract work in a workmanlike manner and in accordance with its established construction schedule as was possible under the extreme and unusual weather conditions extant for the Michigan weather prevailing at the time in question and the delays caused by the Government in the approval of the design documents.

14. That the alleged facts relied upon by the Defendant United States were inconsequential and incorrect thus making the termination wrongful.

15. That Plaintiff was substantially complete with the contract work known as the Total Army School Systems building (TASS) as indicated on the partial Punch List prepared by the Government, issued to on/or about November 1, 2006. A copy of the handwritten Architectural Punch List is too voluminous to attach and because Defendant United States is in possession of same, they it is not attached hereto, but are hereby referenced and adopted as a part of this complaint.

16. That Plaintiff was shown the Mechanical Work Punch List on February 5, 2007 but was not given a copy of same nor given the opportunity to perform the corrective work indicated thereon.

17. That Plaintiff was also shown a series of 144 pictures showing purported errors in the "fire stopping" work that were not identified as to location in the building

but was not given a copy of the photographs nor the opportunity to perform the corrective work, if any, indicated thereon.

18. That the Government occupied the building starting in October 2006 with the introduction of its furniture and equipment distributed to each and every room in the structure.

19. That the wrongful termination caused the bonding company that issued its Performance Bond number 103977914 in the Penal Sum of $13,599,009.00 (Exhibit 2) to complete the work included in the withheld Mechanical Work Punch List and the series of 144 unidentified photographs.

20. That the wrongful termination will caused the bonding company that issued its Payment Bond number in the Penal Sum of $13,985,244.48 (Exhibit 3) to pay the unpaid subcontractors for the work that they had performed on the project

21. That the wrongful termination will cause the bonding company that issued its Performance and Payment Bonds to provide management and attorney fees in an unknown amount.

22. That the wrongful termination caused the loss of the entire business of Plaintiff in that it is now unable to secure Performance and Payment Bonds due to said termination making Plaintiff unable to survive and incurring an economic loss of $2,000,000.00

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States, as follows:

a. In the amount of $2,000,000.00 to compensate Plaintiff for the loss of its business.

b. In the amount of $1,000,000.00 to compensate Plaintiff for the amount it indemnifies its Bonding Company.

c. To declare the termination a termination for the convenience of the government to restore the reputation of Plaintiff and allow it to secure bonds needed to re-start its business and recover its credit.

d. Award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT II**

23. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

24. That during the course of the construction, Plaintiff submitted requests for change orders for an extension of contract time and for various extra work ordered by the Contracting Officer's Project Representative.

25. That Plaintiff submitted its request for a change order for an extension of contract time dated July 14, 2005 in the amount of 247 days. (Exhibit 4).

26. That the Defendant United States wrongfully refused to issue its change order or extension of contract time by letter dated August 18, 2005. (Exhibit 5)

27. That the wrongful refusal to issue its change order was a breach of contract.

28. That the breach of contract damaged Plaintiff JOA in the amount of purported liquidated damages being assessed against the contract balance of $451,743.54.

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $451,743.54 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT III**

29. Plaintiff JOA re-alleges the preceding paragraphs as if fully set forth herein.

30. That during the course of the construction, Plaintiff JOA submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

31. That Plaintiff JOA submitted its request for a change order dated October 19, 2005, in the amount of $811,461.77 (revised to $329,056.00) for the unusual and unexpected additional cost of steel materials as a result of the delay in approval of the design drawings by the Government and the failure of the Government to properly specify the time required for the National Guard of Michigan to approve the completed design drawings. (Exhibit 6)

32. That the Defendant United States wrongfully refused to issue its change order issuing its final decision on March 13, 2006. (Exhibit 7)

33. That the wrongful refusal to issue its change order was a breach of contract.

34. That the breach of contract damaged Plaintiff JOA in the amount of $329,056.00.

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $329,056.00 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT IV**

35. Plaintiff JOA re-alleges the preceding paragraphs as if fully set forth herein.

36. That during the course of the construction, Plaintiff JOA submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

37. That Plaintiff JOA submitted its request for a change order dated October 16, 2006, in the amount of $12,863.26 for the additional labor and materials to

furnish and install an additional catch basin in the courtyard area as required by the Defendant United States. (Exhibit 8)

38. That the Defendant United States wrongfully refused to issue its change order issuing its final decision on October 30, 2006. (Exhibit 9)

39. That the wrongful refusal to issue its change order was a breach of contract.

40. That the breach of contract damaged Plaintiff JOA in the amount of $12,863.26.

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $12,863.26 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT V**

41. Plaintiff JOA re-alleges the preceding paragraphs as if fully set forth herein.

42. That during the course of the construction, Plaintiff JOA submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

43. That Plaintiff JOA submitted its request for a change order October 16, 2006, in the amount of $17,580.68 for the additional labor and materials to furnish and install an enhanced hardware function on exterior doors required by the Defendant United States. (Exhibit 8)

44. That the Defendant United States wrongfully refused to issue its change order issuing its final decision on October 30, 2006. (Exhibit 9)

45. That the wrongful refusal to issue its change order was a breach of contract.

46. That the breach of contract damaged Plaintiff JOA in the amount of $17,580.68.

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $17,580.68 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

## COUNT VI

47. Plaintiff JOA re-alleges the preceding paragraphs as if fully set forth herein.
48. That during the course of the construction, Plaintiff JOA submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.
49. That Plaintiff JOA submitted its request for a change order October 16, 2006, in the amount of $87,621.65 for the additional labor and materials to install card readers for all of the barracks doors as required by the Defendant United States. (Exhibit 8)
50. That the Defendant United States wrongfully refused to issue its change order issuing its final decision on October 30, 2006. (Exhibit 9).
51. That the wrongful refusal to issue its change order was a breach of contract.
52. That the breach of contract damaged Plaintiff JOA in the amount of $87,621.65

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $87,621.65 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

## COUNT VII

53. Plaintiff JOA re-alleges the preceding paragraphs as if fully set forth herein.
54. That during the course of the construction, Plaintiff JOA submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

55. That Plaintiff JOA submitted its request for a change order October 16, 2006, in the amount of $3,380.45 for the additional labor and materials to install continuous hinges on 20 doors as required by the Defendant United States. (Exhibit 8)

56. That the Defendant United States wrongfully refused to issue its change order issuing its final decision on October 30, 2006. (Exhibit 9)

57. That the wrongful refusal to issue its change order was a breach of contract.

58. That the breach of contract damaged Plaintiff JOA in the amount of $3,380.45.

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $3,380.45 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT VIII**

59. Plaintiff JOA re-alleges the preceding paragraphs as if fully set forth herein.

60. That during the course of the construction, Plaintiff JOA submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

61. That Plaintiff JOA submitted its request for a change order October 16, 2006, in the amount of $2,006,482.16 for the additional labor and materials to increase the size of the structure by and additional 17,126 square feet as required by the Defendant United States. (Exhibit 8)

62. That the Defendant United States wrongfully refused to issue its change order issuing its final decision on October 30, 2006. (Exhibit 9).

63. That the wrongful refusal to issue its change order was a breach of contract.

64. That the breach of contract damaged Plaintiff JOA in the amount of $2,006,482.16.

WHEREFORE, Plaintiff JOA prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $2,006,482.16 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

JOHN K. GRYLLS, PC

John K. Grylls
18430 Mack Avenue
Grosse Pointe Farms, MI 48236
(313) 885-0123
(313) 886-7699 fax

EXHIBIT LIST

1. Notice of Termination – February 23, 2007
2. Performance Bond – February 24, 2003
3. Payment Bond - February 24, 2003
4. Request for an extension of time – July 14, 2005
5. Denial of extension if time – August 18, 2005
6. Request for increase for steel price rise – October 19, 2005
7. Denial of increase for steel price rise – March 13, 2006
8. Request for increase due to scope changes – October 16, 2006
9. Denial of increase due to scope changes – October 30, 2006

# EXHIBIT 1

**DEPARTMENT OF THE ARMY AND THE AIR FORCE**
NATIONAL GUARD BUREAU
UNITED STATES PROPERTY AND FISCAL OFFICE FOR MICHIGAN
3111 WEST ST JOSEPH STREET
LANSING MI 48913-5102

23 February 2007
Certified Mail

Contracting Office

J.O.A. Construction Co. Inc.
16856 Meyers Road
Detroit, Michigan 48235

SUBJECT: Notification of Termination for Default, Contract No. DAHA20-00-D-5008/0016 Total Army School System awarded on 20 February 2003.

1. Reference JOA's letter dated 22 December 2006 regarding Government's Show Cause Notice.

2. The Government's position is that your response, while listing specific open issues does not adequately address the concerns expressed by the Government in the Show Cause Notice dated 18 December 2006. The Government's major concerns are the unacceptable masonry work, inoperable mechanical units, inoperable controls, and life safety issues. There are many other smaller items that have not been completed or have been improperly completed.

3. JOA Construction has not provided adequate personnel, supervision, A&E support, or communication to resolve the many outstanding problems or prosecute this project to completion. To date the Government has not witnessed any diligent work by JOA Construction to complete the project. Therefore, the Government will pursue, in accordance with Federal Acquisition Clause 52.249-10, a Termination for Default due to the Contractor's failure to perform it's contractual obligations as Sampled in the following:

    a. Punch list items are not yet complete. Beneficial occupancy is not possible due to uncompleted punch list items.

    b. This project has been in default since 25 May 2005 with little or no effort to mitigate any liquidated damages by resolution of open issues.

    c. Project has been at 96% complete since 30 April 2006 and JOA Construction has made minimal effort to complete the project.

4. The Government has gone to great lengths to work with JOA Construction to complete this project. We proposed working with JOA Construction in Alternative Disputes Resolution (ADR) to resolve outstanding issues. JOA Construction declined. We proposed holding an additional Partnering Meeting

with JOA Construction to reconfirm our commitment to working with JOA Construction to complete this project. JOA Construction declined.

5. JOA Construction's right to proceed under this contract is terminated. Supplies or services terminated may be purchased against the contractor's account and the contractor will be held liable for any excess costs.

6. The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs.

7. The Contracting Officer has determined that the failure to perform is not excusable and this notice of termination constitutes this decision. The Contractor has the right to appeal this decision under the Disputes clause.

8. If you have any questions or concerns, please call the undersigned at 517-483-5947.

//////original signed//////
Bryon Gerwolds
Contracting Officer

Copy Furnished:
SBA/Mr. Valle
Travelers Casualty & Surety Company of America/Curtis Blizzard
Travelers Casualty & Surety Company of America/John Scarpellino
USPFO/COL Barner
SANGB/Ms. Hill
Judge Advocate General/MAJ Wojcik
FMO/COL Mickelson
FMO/MAJ Hallenbeck

# EXHIBIT 2

| PERFORMANCE BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 02/24/03 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington DC 20405

**PRINCIPAL** (Legal name and business address)
J.O.A. Construction Co., Inc.
16856 Meyers
Detroit, MI 48235

**TYPE OF ORGANIZATION** ("X" one)
☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

**STATE OF INCORPORATION**
Michigan

**SURETY(IES)** (Name(s) and business address(es))
Travelers Casualty and Surety Company of America
575 East Big Beaver Road, Suite 185
Troy, MI 48083-1397

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 13 | 590 | 650 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 02/07/03 | DAHA20-00-D-5008/0016 TOC Project 260085 Total Army School Sys Ft.Custer Training Ct Augusta, MI |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. [signature] (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Johnson Akinwusi President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | Travelers Casualty and Surety Company of America, Troy, MI 48083-1397 | CT | $64,120,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. C. Sue Knecht Attorney-in-fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) *(Continued)*

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | 1. | 2. | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY C | NAME & ADDRESS | | 2. | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY D | NAME & ADDRESS | | 2. | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY E | NAME & ADDRESS | | 2. | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY F | NAME & ADDRESS | | 2. | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY G | NAME & ADDRESS | | 2. | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | | | |

| BOND PREMIUM | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|
| | 6.655 Avg. | $90,451.00 |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

**KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY,** corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: **Donn Johnson, H. T. Monroe, Ila Konja, Edmund M. George, Jane M. Haller, Robert F. Moglia, Jr., Thomas C. Moglia, Edward T. Fletcher, of Bloomfield Hills, Michigan,** their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

**This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:**

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

ST PAUL TRAVELERS

# IMPORTANT DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of covered losses caused by certain acts of international terrorism. We are providing you with this notice to inform you of the key features of the Act, and to let you know what effect, if any, the Act will have on your premium.

Under the Act, insurers are required to provide coverage for certain losses caused by international acts of terrorism as defined in the Act. The Act further provides that the Federal Government will pay a share of such losses. Specifically, the Federal Government will pay 90% of the amount of covered losses caused by certain acts of terrorism which is in excess of an insurer's statutorily established deductible for that year. The Act also caps the amount of terrorism-related losses for which the Federal Government or an insurer can be responsible at $100,000,000,000.00, provided that the insurer has met its deductible.

Please note that passage of the Act does not result in any change in coverage under the attached policy or bond (or the policy or bond being quoted). Please also note that no separate additional premium charge has been made for the terrorism coverage required by the Act. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and is no more than one percent of your premium.

IN WITNESS WHEREOF, **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY** have caused this instrument to be signed by their **Senior Vice President** and their corporate seals to be hereto affixed this 2nd day of August, 2004.

STATE OF CONNECTICUT

}SS. Hartford

COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY

By ____________________

**George W. Thompson**
**Senior Vice President**

On this 2nd day of August, 2004 before me personally came **GEORGE W. THOMPSON** to me known, who, being by me duly sworn, did depose and say: that he/she is **Senior Vice President** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY**, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.

Marie C Tetreault

My commission expires June 30, 2006 Notary Public
**Marie C. Tetreault**

CERTIFICATE

I, the undersigned, Vice President, Bond of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY,** stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 16th day of December, 2004

By ____________________

**Dwight F. Miller**
**Vice President, Bond**

# EXHIBIT 3

Bond No. 103771214

| | | |
|---|---|---|
| **PAYMENT BOND** *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* 02/24/03 | OMB No.: 9000-0045 |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL *(Legal name and business address)*

J.O.A. Construction Co., Inc.
16856 Meyers
Detroit, MI 48235

TYPE OF ORGANIZATION ("X" one)

- [ ] INDIVIDUAL
- [ ] PARTNERSHIP
- [ ] JOINT VENTURE
- [X] CORPORATION

STATE OF INCORPORATION: Michigan

SURETY(IES) *(Name(s) and business address(es))*

Travelers Casualty and Surety Company of America
575 East Big Beaver Road, Suite 185
Troy, MI 48083-1397

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 13 | 590 | 650 | 00 |

CONTRACT DATE: 02/07/03

CONTRACT NO.: DAHA20-00-D-5008/0016
TOC Project 260085
Total Army School Sys.
Ft. Custer Training Ctr
Augusta, MI

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | [signature] (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | Johnson Akinwusi, President | | | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) *(Typed)* | | |

**CORPORATE SURETY(IES)**

| SURETY A | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|
| NAME & ADDRESS | Travelers Casualty and Surety Company of America, Troy, MI 48083-1397 | CT | $ 64,120,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. C. Sue Knecht, Attorney-in-fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1 | 2. | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY C | NAME & ADDRESS | | | $ | Corporate Seal |
| | SIGNATURE(S) | 1 | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY D | NAME & ADDRESS | | | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY E | NAME & ADDRESS | | | $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY F | NAME & ADDRESS | | | $ | Corporate Seal |
| | SIGNATURE(S) | 1 | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1 | 2. | | |
| | | | STATE OF INC. | LIABILITY LIMIT | |
| SURETY G | NAME & ADDRESS | | | $ | Corporate Seal |
| | SIGNATURE(S) | 1 | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the lett[er] identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit [of] Individual Surety (Standard Form 28) for each individual surety, sh[all] accompany the bond. The Government may require the surety [to] furnish additional substantiating information concerning their financ[ial] capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal" and shall affix an adhesive seal if executed in Maine, New Hampshir[e] or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in t[he] space provided.

"A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Each notice shall be served by mailing the same by certified mail, postage prepaid, in an envelope addressed to the prinicpal contractor, the governmental unit involved, at any place at which said parties maintain a business or residence. The principal contractor shall not be required to make payment to a subcontractor of sums due from the subcontractor to parties performing labor or furnishing materials or supplies, except upon the receipt of the written orders of such parties to pay to the subcontractor the sums due such parties."

Source:

P.A.1963, No. 213 # 7, Eff. Sept. 6.
C.L.1948, # 129.207.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

**KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY,** corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: **Donn Johnson, H. T. Monroe, Ila Konja, Edmund M. George, Jane M. Haller, Robert F. Moglia, Jr., Thomas C. Moglia, Edward T. Fletcher, of Bloomfield Hills, Michigan,** their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

**This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:**

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

ST PAUL TRAVELERS

# IMPORTANT DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of covered losses caused by certain acts of international terrorism. We are providing you with this notice to inform you of the key features of the Act, and to let you know what effect, if any, the Act will have on your premium.

Under the Act, insurers are required to provide coverage for certain losses caused by international acts of terrorism as defined in the Act. The Act further provides that the Federal Government will pay a share of such losses. Specifically, the Federal Government will pay 90% of the amount of covered losses caused by certain acts of terrorism which is in excess of an insurer's statutorily established deductible for that year. The Act also caps the amount of terrorism-related losses for which the Federal Government or an insurer can be responsible at $100,000,000,000.00, provided that the insurer has met its deductible.

Please note that passage of the Act does not result in any change in coverage under the attached policy or bond (or the policy or bond being quoted). Please also note that no separate additional premium charge has been made for the terrorism coverage required by the Act. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and is no more than one percent of your premium.

**IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY** have caused this instrument to be signed by their **Senior Vice President** and their corporate seals to be hereto affixed this 2nd day of August, 2004.

STATE OF CONNECTICUT

}SS. Hartford

COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY

By ______________________

**George W. Thompson**
**Senior Vice President**

On this 2nd day of August, 2004 before me personally came **GEORGE W. THOMPSON** to me known, who, being by me duly sworn, did depose and say: that he/she is **Senior Vice President** of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY**, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.

Marie C Tetreault

My commission expires June 30, 2006 Notary Public
**Marie C. Tetreault**

CERTIFICATE

I, the undersigned, Vice President, Bond of **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY,** stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 16th day of December, 2004

By ______________________

**Dwight F. Miller**
**Vice President, Bond**

# EXHIBIT 4

**John K. Grylls, P.C.**

18430 MACK AVENUE
GROSSE POINTE FARMS
MICHIGAN, 48236

PHONE 313 885-0123 FAX 313 886-7699 E-MAIL jkgrylls@comcast.net

July 14, 2005

Ms. Dawn M. Filipowicz, M CW4 MIARNG
USFPO for Michigan
3111 W. St. Joseph Street
Lansing, MI 49513-5102

Re: Design/Build Total Army School System: Augusta, MI
Contract Number DAHA20-00-D-5008/0016
J.O.A. Construction Co., Inc. - Job Number 2003-1
Request for an Extension of Contract Time

Dear Ms. Filipowicz,

Please consider this letter as a request for an extension of contract completion date by J.O.A. Construction Co., Inc. Based upon the following contract conditions prevailing over the past several years.

The design/build proposal was submitted in November 2002 based upon the RFP provided by the Government. The Signed Contract was issued on February 20, 2003 and the Notice of Award was issued to J.O.A. on February 21, 2003. Included in the contract the review time for the design stages was stipulated as 30 days for the NGB review with the Owners comments due within 30 to 45 days with design work continuing during the review time.

The 10% design documents were submitted April 25, 2003, reviewed April 30, 2003 with comments returned May 5, 2003 and a Notice to Proceed to 35% was to be issued by the Government. The Notice to Proceed to the next percentage of design was not required as of May 8, 2003.

The 35% design documents were submitted June 10, 2003 and a review meeting was set up for June 25, 2003. The submittals were marked up by June 26, 2003 and declared completed by June 27, 2003 with the Government marking up the design changes by June 30, 2003. During this time period, the Parking Lot design was 100% complete and to be re-submitted so that work could start July 7, 2003. The site work was to be started after 65% design approval and 100% civil approval.

The 65% design documents were submitted July 28, 2003 but there was difficulty in arranging for a review meeting for the next 20 days. On August 18, 2003, the review of the 65% design documents was held. At that meeting the government instructed J.O.A. to submit 95% final design documents to the NGB for its review. The 95% design documents were to be complete by September 8, 2003 and reviewed by September 19, 2003. The Government released J.O.A. to start 95% design on September 20, 2003

The 95% design documents were submitted on September 15, 2003 and the first review meeting was held soon after receipt of the submittals. An application for the submittals of the 95% design documents was sent to the State of Michigan on September 17, 2003. The requirement for such submittals was confirmed by the Government on September 19, 2003.

Although the Government and J.O.A. were attempting to have all footings in place before the winter of 2003/2004 and the site work started, a severe delay was caused by the Government and the State of Michigan.

The Government changed its officer in charge sometime during the September 2003/October 2003 period. In the fall of 2003, J.O.A. was scheduled to start the civil work but was stopped on October 3, 2003 and authorized to proceed on December 9,

2003 , but it took until April before the proper equipment could be brought to the site due to the frost laws controlled by he Michigan Department of Transportation.

The Government claimed that the 95% documents were too incomplete to review in that they wanted site design calculations , storm water calculations and approval by NGB of the civil design. Additional 100% civil documents and design calculations were again sent to the Government by October 23, 2003. The Government acknowledged receipt of the calculations and design documents in CD form on October 27, 2003 but later informed J.O.A. that they did not have the 100% Civil documents and 95% submittals. Finally, the Government indicated that the 95% documents looked good on December 1, 2003 but did not approve of either the 95% documents or the 100% civil documents. The first 95% design document review was pushed off to after the first of the year 2004 to January 15, 2004 and the final review meeting was adjourned to February 10, 2004. In the meantime, J.O.A. had submitted the partially reviewed 95% documents to the State of Michigan for review on January 13, 2004.

The Government issued its Notice to Proceed with the construction of the building envelope on January 15, 2004. J.O.A. was then in sever winter weather, without 100% design documents and partially approved 65% design documents and without any approval from NGB or the State of Michigan.

The State of Michigan submitted its review comments on February 26, 2004 which were responded to by J.O.A. on March 2, 2004 but as the major contributor to the delay of the construction, the State did not issued its approval until May 4, 2004 at which time J.O.A. could finalize its subcontracts and start construction.

The Government added work to the J.O.A. contract without any additional time to incorporate such added work. J.O.A. was requested to quote the additional low voltage

work as bid by McPhee Electric who had not been a subcontractor of J.O.A. . The quotation was submitted April 9, 2004 but a Modification in the amount of $352.292.00 was not issued until September 24, 2004 after McPhee had raised its price. No additional time was provided for this change to the scope of work.

J.O.A. promptly started the construction by completing the rough grading by May 8, 2004 and continuing the normal construction process. The discovery and removal of unanticipated spoil was discussed July 8, 2004, quoted by July 14, 2004 but the Modification was not issued until February 2, 2005. Again no additional time was provided.

During the heart of the winter of 2004/2005. J.O.A. requested a shut down to attempt to save costs and prevent inefficient work. J.O.A. did not shut down and continued its construction through the winter, suffering the inefficiencies.

J.O.A. respectfully requests that the following additional contract completion time be granted for the reasons stated above:

| | | |
|---|---|---|
| 1. | Delay In review and approval of 95% design | 30 days |
| 2. | Delay by stop order October 2003 to December 2003 | 60 days |
| 3. | Delay in State of Michigan - January 2004 to May 2004 | 120 days |
| 4. | Modification No. 2 - low voltage electrical | 30 days |
| 5. | Modification No. 3 - removal of spoil | 7 days |
| | Total | 247 days |

Very truly yours,

John K. Grylls, attorney at law

cc: client J.O.A. Construction Co., Inc.

Bid submittals

Notice of Award of Contract 2/21/03

Signed Contract 2/20/03

Review time: NGB schedule allows 30 days for review, 5 days for the cursory review and 5 days for compiling Owner and NGB comments

Memo 3/3/03 - 5. Review time for 35% and 95% submittals by NGB require 30 days. 8. Owner review comments may take 30-45 days. 7. Design work to continue during review. 13. Contract time 793 days

Progress schedule - 10% drawings complete by 4/25/03 - reviewed 4/30/03

10% review meeting comments 5/5/03

10% review - Report of Meeting. 18. Government will issue Notice to Proceed from 10% design concept to 35% preliminary submittals 5/16/03

Outman e-mail - no requirement for notice to proceed to 35% 5/8/03

Submittals for 35% design June 10, 2003

Agenda for 35% review meeting 6/25/03

Mickelson e-mail - 6/26/03 - marked up 35% submittals

Mickelson e-mail 6/27/03 - Completed 35% review - in the mail

35% review - Report of Meeting.7/1/03 - 1. Parking lot to start week of July 7, 2003. 2. 100% parking design to be resubmitted. 4. Site work to start upon approval of 65% design and approval 100% civil design. 45. Design changes. 59. Government to mark up set of 35% design changes by June 30, 2003.

Outman e-mail - 8/6/03 - sorry about delay in meeting dates 65% review

Lanczy e-mail - 8/6/03 - can't make meeting - schedule - 95% discrepancies.

Outman e-mail - 8/6/03 - sorry about delay in meeting - August 18th

Agenda for 65% review meeting 8/13/03

Meeting Minutes - 8/7/03 - would not issue Notice to Proceed with each phase of design, still needs formal written approval of design submittals. Will be done form 65% to final.

65% review - Report of Meeting. 8/18/03. 3. Service drive approval from MDOT. 8. 2 full size prints of 95% final construction documents to be sent to NGB for review. 9. 95% submittals to be delivered 9/8/03. 34. 95% construction documents to be reviewed 9/11/03 and 9/12/03.

Outman e-mail 8/20/03 - add to report 65% design verbally approved releases AE to proceed with 95% design.

Cypher e-mail 8/22/03 - contract award 11/4/02 - received contract 3/24/03

Lanczy e-mail to Outman 8/22/03 - We want footings in by November to avoid frost.

Mickelson e-mail - 9/5/03 - what is plan for 95% review?

Cypher e-mail - 9/8/03 - request week delay for 95% review

Outman e-mail - 9/9/03 - ok extension - what dates?

Outman e-mail - 9/11/03 - September 16 in Lansing - cc: Mickelson

L&F fax - 9/17/03 - application to for state for plan review

Outman e-mail - 9/18/03 - where dose it require state ?

Cypher e-mail - 9/18/03 - why send to State?

Outman e-mail - 9/19/03 - change - must send to state per Section D - NGB 415-5 STANDARDS, page 6. cc. Mickelson & Hallenbeck

Outman e-mail - 9/19/03 - State takes a long time. Mickelson replaced with Hallenbeck

Outman e-mail - 10/6/03 - 95% submittals not complete enough to review

Telephone Conference 10/13/03 - 1. Provide site design calculations. 2. Storm water calculations. 9. Need NGB approval of civil drawings. (Action delivered to Government)

Hargis e-mail - 10/23/03 - overnight 100% civil submittals.

Cypher e-mail - 10/23/03 - what more do we need for 95% submittals?

Outman e-mail - 10/27/03 - have detention basin calculations & cd's

Outman e-mail - 11/3/03 - do not have 100% civil and 95% submittals

Hallenbeck e-mail 12/1/03 - civil documents will look good with corrections.

Outman e-mail - 12/2/03 - civil look good with few corrections

Telephone Conference 12/5/03 - 18. An official letter will be sent by Outman stating civil design approved. 19. NGB is reviewing 95% building drawings comments by 12/15/03. 95% review meeting scheduled for 12-22-03. 20. Inquired about plan submittals to Michigan State - Outman to contact Cypher.

Outman e-mail - 12/8/03 - State review - I stated that State review was required in e-mail of 9/19/03 - it is quite a long process 2 - 3 months - meet 12/12/03 to discuss.

Outman e-mail - 12/9/03 - more on state review

Hargis e-mail - 12/17/03 - Hallenbeck has design calculations

L&K fax - 1/3/04 - submittals of plans and specs to state

Outman e-mail - 1/8/04 - meeting changed from ½2/04 to 2/10/04

Submittals to State - 1/13/04

Notice to Proceed with construction of building envelope 1/15/04

State letter - 1/15/04 - have plans for review

Request for proposal - audio visual - 1/15/04

Report of Construction Meeting - 1/15/04 - reviewed 95% submittals

L&K e-mail - 2/5/04 - state has documents for review

Partnering Minutes - 2/10/04

L&K fax - 2/16/04 - plans being reviewed by you

State fax - 2/20/04 - review comments

JOA welcome to subcontractors - 2/26/04

JOA response to review comments - 3/2/04

JOA re-quote for McPhee - 4/9/04

State approval of drawings - 5/4/04

Report of Meeting - 5/8/04 - rough grade complete

Report of Construction Meeting - 5/9/04 - 2. State approved drawings 5/4/04; 3. Start date unknown - completion August 28, 2005; 18. 100% drawings officially approved.

Report of Construction Meeting - 7/8/04 - 4. Spoil area encountered; 6. Footings and foundation walls installed B & C wings.

JOA quote to remove spoil - 7/14/04 - $8159.73

Report of Construction Meeting - 7/22/04 - 4. Items causing delay

Report of Special A/V Meeting - 7/23/04

Report of Construction Meeting - 8/11/04 - meeting 7/30/04 - 4. Items causing delay, spoil area - low voltage change order.

Report of Construction Meeting - 8/24/04 - 4. Items causing delay, spoil area - low

voltage change order.

Contract Modification 01 - 9/1/04 - Differing Site Conditions - T&M not to exceed &8,859.00.

Outman e-mail - 9/1/04 - need quote for McPhee.

Cypher e-mail - 9/1/04 - Submitted McPhee quote last March. Now submitted increase to quote.

JOA fax - 9/1/04 - Revised quote.

Lanczy e-mail - 9/3/04 - Government not responsible for delays.

Report of Construction Meeting - 9/23/04 - H. Spoils mod to be sent; 1. Mod on underground conduit to be sent; 6. Footings and foundations to be complete in 2 weeks.

Contract Modification 02 - 9/24/04 - Low voltage additions - $352,292.00

Report of Construction Meeting - 10/5/04 - 4. Footings complete

JOA re-quote - 10/12/04 - removal of spoils.

Report of Construction Meeting - 10/21/04 - 12. Kitchen equipment drawings.

JOA letter - 11/5/04 - Hallenbeck stopped work in October 2003 and we did not start again until December 9, 2003 putting u into bad weather. Hallenbeck again stopped the work in December 17, 2003 until April 2004..

Report of Construction Meeting - 11/9/04 - C. JOA requested shut down due to cold; 3. Floor slabs to start.

Report of Construction Meeting - 11/23/04 - 8. Floor slabs waiting on underfloor electrical.

Cure Notice - 12/21/04 - response to cure notice insufficient.

Show cause - 12/27/04 - failure to perform.

JOA letter - 1/6/05 - working through winter - on schedule

Report of Construction Meeting - ½0/05 - A. JOA to haul off spoils; 5. Freezing weather; 8D. JOA winterizing; 9A. Need design calculations retention pond, 9B, submittals to state, 9C. 100% completed (revised) plans submitted March 4, 2004, not 10/6/04.

Report of Construction Meeting - 2/1/05 - A. JOA to haul off spoils; 5. Freezing weather

Report of Construction Meeting - 2/15/05 - A. JOA to haul off spoils; 5. Power out.

Report of Construction Meeting - 3/1/05 - 4. Project 33% complete; 9. Fire alarm being revised.

Report of Construction Meeting - 3/22/05 - electrical changes, security system and A/V

Outman letter - 4/6/05 - original mod 3 - differing site conditions $8,359.00

Outman letter - 4/18/05 - Cure Notice

Report of Construction Meeting - 5/24/05 - 3. Modification issued for communications; 4. dirt modification on hold

Flipowicz letter - 6/21/05 - Cure Notice

The time indicated in the contract between the Contractor and the Government for the approval of design documents is covered by the following page 6 of 16:

> "At 10%, 35%, 95%, and 100% design the drawings need to be submitted cor review by NGB and the schedule allows 30 days for their review. Section E also says prior to forwarding documents to NGB for review the Owner will perform a cursory review for obvious errors or omissions. How much time should be allowed for Owner review in the schedule? Some time will be required to compile Owner and NGB comments before reviewing with AE, How much time should be allocated on our schedule? **Five working days for the cursory review. Five days for compiling Owner and NGB comments.**

The Contractor's requirement to provide for all permits is restricted to only one such permit page 10 of 16:

> What permits are the AE/Contractor responsible for and where are they to obtain the cost for the project? Normally in State or Federal fund\ed money there is a State contact for the AE/Contractor that they call for these costs. Who would we contact? **The only required permit is for Soil Erosion. This will be issued through DMVA and there is no associated cost. Enforcement will be by Department of Military and Veteran's Affairs**

# EXHIBIT 5

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
UNITED STATES PROPERTY AND FISCAL OFFICE FOR MICHIGAN
3111 WEST SAINT JOSEPH STREET
LANSING, MI 48913-5102

18 August 2005
Certified Mail #
70010320000192048933

Contracting Office

J.O.A. Construction Co. Inc.
16856 Meyers Road
Detroit, Michigan 48235

SUBJECT: Show Cause Notice, Contract No. DAHA20-00-D-5008/0016 Total Army School System

You have failed to submit an adequate response to show how you are going to address the issues described in the Government's Response to Cure Notice dated 21 June 2005 within the 10 days specified. Therefore the Government is considering terminating the contract under the provisions for default outlined in FAR clause 52.249-10 Default (Fixed-Price Construction). Furthermore, your response dated 25 April 2005 to the original Cure Notice dated 18 April 2005 was insufficient because you did not provide any information as to how your firm was going to increase performance to complete this project by your proposed completion date of 17 September 2005.

The Government is allowing you to continue work on this contract in a <u>Default Status.</u> However, by permitting you to continue performance, the Government is <u>not</u> waiving any of its rights under the contract. Liquidated damages in the amount of $420 per day may be assessed for each day of delay and a one-time fixed charge of $153 for legal review. Your attention is invited to the respective rights of the Contractor and the Government and the liabilities that may be invoked if a decision is made to terminate for default.

Any assistance given to you on this contract or any acceptance by the Government of delinquent goods or services will be solely for the purpose of mitigating damages, and it is not the intention of the Government to condone any delinquency or to waive any rights the Government has under the contract.

This office received a request for additional contract completion time from your representative, John K. Grylls, attorney at law, on 19 July 2005. After a thorough review of the request and supporting documentation, the Government has decided the following:

(1)
- Mr. Grylls requested an additional 30 days for Government delay in review and approval of 95% design. The Government's response is that when the 95% design was submitted for review on 11 September 2003, it was incomplete. Some of the missing items were site design calculations, storm water drainage calculations, soil reports, and the color chart. Since the 95% design was incomplete and had to be returned to you for additional re-work, any delay is your responsibility. The Government will grant 0 additional days of completion time for this item.

(2)
- Mr. Grylls requested an additional 60 days from the Government because of the stop work order given by the Government from October 2003 to December 2003. There were issues with site drainage that needed to be addressed by the 95% design plans and no more underground piping could be done until there was resolution. This stop work order was given because of your failure to submit completed 95% design plans for review. The Government will grant 0 additional days of completion time for this item.

- Mr. Grylls requested an additional 120 days from the Government because of the approval needed by the State of Michigan Department of Labor and Economic Growth of the 95% design. J.O.A. was made aware of the requirement to send the 95% design for code review as stated in the Request for Proposal Section D, NGB 415-5 Standards. When asked to clarify, the Government stated that no approval was needed. Upon further review, the Government rescinded and told you the next day, 19 Sept 2003 that the State of Michigan review was required. It took 117 days to send the 95% design to the State of Michigan on 14 Jan 2004. The Government's position is that you were aware of the design review and should have planned accordingly. The Government will grant 0 additional days of completion time for this item.

- Mr. Grylls requested an additional 30 days from the Government for completion of the low voltage modification, Mod #2. The Government has not been given any proof that this modification will affect the critical path of this project and will delay the construction schedule. This was a bi-lateral modification signed by you and no additional time was requested at the time of the modification. The Government will grant 0 additional days of completion time for this item.

- Mr. Grylls requested an additional 7 days from the Government for unforeseen sight conditions, Mod #3. The Government has not been given any proof that these unforeseen sight conditions affected the critical path of this project and will delay the construction schedule. Modification #1 was done as a Not To Exceed amount immediately, so as not to delay the project. Modification #2 was done after the fact to verify the actual cost to

correct the unforeseen sight conditions. Both of these bi-lateral modifications were signed by you and no additional time was requested at the time of these modifications. The Government will grant 0 additional days of completion time for this item.

Since there will be no additional time granted to this contract, the completion date remains unchanged. The completion date is still 26 May 2005. This means that you are still working in a default status. You are required to provide this office with a new AF 3064 Contract Progress Schedule and a new updated Primavera construction schedule within the next seven days.

If you have any questions or concerns, please call the undersigned at 517-483-5711 or the Contract Administrator (CPT Gerwolds) at 517-483-5947.

Dawn M. Filipowicz
CW4, QM MIARNG
Contracting Officer

Copy Furnished:
SBA/Mr. Valle
Travelers Casualty & Surety Company of America
FMO/MAJ Hallenbeck
SANGB/Ms. Hill
Judge Advocate General/CPT Wojcik

# EXHIBIT 6

John K. Grylls

18430 MACK AVENUE
GROSSE POINTE FARMS
MICHIGAN 48236

PHONE (313) 885-0123 FAX (313) 886-7699 johnkgrylls@comcast.net

Dawn M. Filipowicz, Contracting Officer
CW4, QM MIARNG
Department of the Army and the Air Force
National Guard Bureau
United States Property and Fiscal Office for Michigan
3111 West Saint Joseph Street
Lansing, MI 48913-5102

October 19, 2005

In Re: J.O.A. Construction Co., Inc.
Contract No. DAHA20-00 D 5008/0016
Total Army School System

Our Client: J.O.A. Construction Co., Inc.
Our Reference Number: 2369-89

Dear Ms. Filipowicz:

Please be advised that this office represents J.O.A. Construction Co., Inc. in regard to its claim for equitable adjustment to its contract amount.

As we are approaching the completion of this arduous design build project we must again raise the issue of an equitable adjustment to our contract amount due to the unforeseen and unforeseeable unusual increase in the price of steel brought about by the unprecedented global demand for steel during the design and approval stage of the project.

The design portion of this project started on the issuing of the notice of award of a contract by the Government to J.O.A. on February 21, 2003. (Exhibit A). The contract was signed by the Government on February 20, 2003 (Exhibit B) and the amount was based upon costs accumulated through January 22, 2003 (Exhibit C), which was

increased to $13,235,200.00 in the signed contract.

The design proceeded to the 35% level at which time the estimated cost was $11, 479.305.95 not including General Conditions, Insurance Bond Costs, Arch/Eng. Fees, OH&P. (Exhibit D).

By April 15, 2003, the design was 10% complete. (Exhibit E). The Government made extensive changes to the original concept on May 5, 2003 (Exhibit F).

By May 5, 2003, J.O.A. issued its schedule for the completion of the 35% drawings by June 2, 2003 and the completion of the 65% drawings by July 14, 2003 (Exhibit G). The Government completed its 35% mark up by June 27, 2003, which included additions to the scope of work (Exhibit H). On June 25, 2003 the 35% drawings were still being discussed and changed by the Government (Exhibit I), which were addressed by J.O.A. on July 1, 2003 (Exhibit J).

An updated progress schedule was submitted showing completion of the 95% drawings by August 25, 2003 and the 100% drawings by October 6, 2003 (Exhibit K). The Government approved this update on August 20, 2003 (Exhibit L). The 65% Pre-Final review was held on August 13, 2003 (Exhibit M) and the 65% drawings were released by the Government on August 20, 2003 (Exhibit N) leaving only 5 days to complete the 95% drawings. On October 9, 2003, the Preliminary 95% review took place (Exhibit O). By December 11, 2003, a Bid Summary was issued showing changes to the construction estimate (Exhibit P).

On September 19, 2003, the Government indicated that the National Guard Bureau and The State of Michigan had to review the 95% drawings (Exhibit Q), which

should have been completed by December 15, 2003 (Exhibit R).

The Government issued its notice to proceed with construction of the building envelope on January 22, 2004 (Exhibit S). It as at this time that hard money bids could be taken from proposed subcontractors. All of the preceding cost figures were estimates and identified as such.

The first returns of proposed subcontractor bids demonstrated the unusual increase in the price of steel, which affected the bids of many of the proposed J.O.A. subcontractors. Notice was given to the Government on March 22, 2004 of the price increase (Exhibit T). By March 23, 2004, the then known steel price increase affected the bottom line cost by an additional $485,127 (Exhibit U). By March 31, 2004, the known price increase to the steel was increased to $811,461.77, which was submitted to the Government on March 31, 2004 (Exhibit V).

The Government responded to the request for an increase to the contract amount on April 27, 2004 stating in effect that there was nothing that could be done at that time. (Exhibit W).

On May 21, 2004, J.O.A. submitted its letter taking exception to the Government's response to its request for an equitable adjustment (Exhibit X). To date, J.O.A. has not had a written response to its May 21st letter.

Although there is not an economic price adjustment clause in the J.O.A. contract and the original contract is a lump sum contract amount, it is clear that the base contract price was based upon subcontractor estimates and the contract amount was always characterized as an estimate. It is further clear that the Government has allowed

economic price increases in lump sum contracts where there is a question or serious doubt concerning the stability of market conditions that would exist during an extended period of contract performance, (FAR 16.203-2). In this case neither the Government nor J.O.A. was aware of, nor could they have been aware of, the extreme global demand for steel foster primarily by the phenomenal use of steel by the Chinese Government.

J.O.A. has proceeded with the construction of the project and suffered the losses associated with the price increase of the steel components in good faith, relying upon the good intentions of the Government to do equity.

Please review your April 27, 2004 response and provide for the revised Increase in the steel price of $811,461.77 as previously demonstrated.

Very truly yours

John K. Grylls, Esq.

cc: Client

CONTRACTOR'S CERTIFICATE

The undersigned contractor, J.O.A. Construction Co., Inc. does hereby certify the attached claim for Equitable Adjustment in the amount of $811, 461.77 saying:

> "I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor"

J.O.A. Construction Co., Inc.

_____________________________by

Johnson O. Akinwusi, its President

Dated: October ____, 2005

# EXHIBIT 7

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
UNITED STATES PROPERTY AND FISCAL OFFICE FOR MICHIGAN
3111 WEST SAINT JOSEPH STREET
LANSING, MI 48913-5102

## CONTRACTING OFFICER'S FINAL DECISION

13 March 2006
Certified Mail # 70010302000192048902

Contract # DAHA20-00-D-5008-0016
Total Army School System

JOA Construction Company Inc.
16856 Meyers Rd
Detroit, MI 48235

### Claim

1. JOA Construction Inc. submitted a claim on 21 October 2005 requesting equitable adjustment to the subject contract due to an unforeseen steel price increase. The original claim was for $811,461.77, revised to $329,056.00 on 29 December 2005. JOA Construction Inc. asserts that the increase was brought about by the "unprecedented global demand for steel during the design and approval stage of the project".

### Background

2. JOA Construction Inc. was issued a firm fixed-price contract on 7 February 2003 for the project titled "Design-Build Total Army School System." The Notice to Proceed for this project was issued on 24 March 2003. The contract performance period is 793 calendar days. As of the date of this decision, the project is @88.418% complete.

3. JOA Construction Inc. submitted a certified claim for steel price increase on 21 October 2005. On 26 October 2005, this office sent the certified claim to the Defense Contract Audit Agency (DCAA) for pricing audit purposes. JOA Construction Inc. was notified on 1 November 2005 that the Contracting Officer received the certified claim and had sent it to DCAA for audit.

4. On 1 December 2005, this office was informed by a representative from the DCAA office that they had met with JOA Construction Inc. to gather documentation needed for the audit on the steel claim. The DCAA representative informed us that JOA Construction Inc. was unable to provide all of the necessary documentation and needed additional time to do so. The Contracting Officer informed JOA Construction Inc. on 1 December 2005 that due to this delay, the Contracting Officer's final decision could not be rendered within the sixty (60) days as required by FAR 33.211, however, a decision would be rendered shortly after the audit was completed by DCAA.

5. DCAA submitted their audit report to this office on 16 February 2006.

6. The Contracting Officer has reviewed the claim, the DCAA report, and the facts as presented by JOA Construction Inc. The Contracting Officer has determined that it is in the best interest of the Government to deny this claim in its entirety for the following reasons:

   a. This is a firm fixed price contract.
   b. There is no economic price adjustment clause in the contract.
   c. The DCAA audit found that JOA Construction Inc. was unable to support the adjustments being requested in their claim with accurate and complete supporting data to include how the adjustment amounts were arrived at and how the items were included in the original contract proposal/bid.

**Decision**

7. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within ninety (90) days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regards to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Dawn M Filipowicz

DAWN M FILIPOWICZ
CW5, QM, MIARNG
Contracting Officer

Copy Furnished:
SBA/Mr.Valle
Travelers Casualty & Surety Company of America
FMO/MAJ Hallenbeck
SANGB/Ms. Hill
Judge Advocate General/MAJ Wojcik

# EXHIBIT 8

ISO 9001 Certified

J.O.A. CONSTRUCTION CO. INC.
GENERAL CONTRACTORS - CONSTRUCTION MANAGERS

October 16, 2006

John J. Wojcik,
MAJ, JA,MIARNG
JFHQ-JA
3411 North Martin Luther King Boulevard
Lansing, MI 48906

**In Re: J.O.A. Construction Co., Inc. vs. TASS**

Dear Major Wojcik,

Please accept this letter as the list of upgrades to the original RFP requested by Major Hallenbeck during the design phase of this project.

1. Additional drains and catch basins in the courtyard area. Quoted extra April 4, 2006. $12,863.26

2. Enhanced hardware function and card readers on exterior doors. Quoted April 4, 2006 $17,580.68

3. Card readers for interior, barracks, doors. Quoted October 4, 2006. $87,621.65

4. Continuous hinges added to 20 doors. $3,380.45

5. Additional floor area square footage of project. Authorized square feet per RFP 98,876. Requested square feet 116,002 authorized by Hallenbeck. Added square feet 17,126. Cost of building $117.16 per square foot. $2,006,482.16

Total 2,127,928.20

Continued...

If you have questions or comments please feel free to contact me.

Sincerely,
**J.O.A. CONSTRUCTION CO., INC.**

Johnson Akinwusi
President

cc: File/joajobs/2003-1 J.O.A. Construction Co., Inc. vs. TASS

ISO 9001 Certified

J.O.A. CONSTRUCTION CO. INC.
GENERAL CONTRACTORS - CONSTRUCTION MANAGERS

CONTRACTOR'S CERTIFICATE

The undersigned contractor, J.O.A. Construction Co., Inc. does hereby certify the attached claim for Enhancements to the RFP in the amount of $2,127,928.20 saying:

"I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor"

J.O.A. Construction Co., Inc.

______________________________by

Johnson O. Akinwusi, its President

Dated: October 16, 2006

16856 Meyers Rd. • Detroit, MI 48235 • (313) 862-8770 • Fax (313) 862-8771

# EXHIBIT 9

DEPARTMENT OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
UNITED STATES PROPERTY AND FISCAL OFFICE FOR MICHIGAN
3111 WEST ST JOSEPH STREET
LANSING MI 48913-5102

## CONTRACTING OFFICER'S FINAL DECISION

30 October 2006
Certified Mail 7002 3150 0001 0147 5341

Contract # DAHA20-00-D-5008-0016
Total Army School System

JOA Construction Company Inc.
16856 Meyers Rd
Detroit, MI 48235

### Claim

1. JOA Construction Inc. submitted a claim dated 16 October 2006, received by this office on 19 October 2006, requesting equitable adjustment to its contract amount due to multiple upgrades to the original RFP they claim were made by MAJ Hallenbeck during the design phase of this project. The amount of the claim was for $2,127,928.20.

### Background

2. The Contracting Officer has reviewed the claim and the facts as presented by JOA Construction Inc. The Contracting Officer has determined that it is in the best interest of the Government to deny this claim in its entirety for the following reasons:

   a. This is a firm fixed price contract.
   b. JOA Construction Inc. did not provide any documentation to support the adjustments being requested in their claim with accurate and complete supporting data to include how the adjustment amounts were arrived at and how the items were added to the original contract bid.

### Decision

3. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within ninety (90) days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regards to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.