IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J.O.A. CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-160C |
| | ) | (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS, IN PART

Pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that this Court dismiss Counts I, II and III of plaintiff's complaint. Plaintiff J.O.A. Construction Co., Inc. ("J.O.A."), alleges in count I of its complaint ("compl.") that it is entitled to $2 million for loss of business and $1 million to indemnify its bonding company, respectively. Compl. at ¶ 22a-b. In count II of its complaint, J.O.A. seeks $451,743.54 in liquidated damages, which have yet to be assessed by the Government. Compl. ¶ 28. Finally, in count III of its complaint, J.O.A. seeks $329,056 for increased steel prices. Compl. ¶ 34. For the following reasons, the Court should dismiss these portions of the complaint.

STATEMENT OF THE ISSUES

1. This Court does not possess jurisdiction over J.O.A.'s claims for loss of business and loss of bonding capacity because such claims were never presented

to the contracting officer pursuant to the Contract Disputes Act.

2. This Court does not possess jurisdiction over J.O.A.'s claim for liquidated damages, which have not been assessed against it.

3. Plaintiff's claim for increased steel prices is not a cognizable basis for relief in firm fixed-price contracts such as this one.

FACTS

On February 20, 2003, the Michigan National Guard contracted with J.O.A. to design and build a three-story, 111,000 square foot, educational building termed the Total Army School System ("TASS") at Ft. Custer Reserve Base, Battle Creek, Michigan. Compl. ¶ 4. The contract cost was $13,235,200. Compl. ¶ 5. The Government terminated J.O.A. for default on February 23, 2007; J.O.A. failed to build the facility to the project specifications and missed its May 25, 2005 completion date. Compl., Exhibit ("Ex.") 1. The contract was terminated at 96% completion, where it had been stalled since April 30, 2006. Id.

ARGUMENT

I. Standard Of Review

The Court of Federal Claims is a court of "exceedingly limited" statutory jurisdiction. Shelleman v. United States, 9 Cl. Ct. 452, 455 (1986). As such, "the jurisdiction of the Court of Federal Claims . . . is prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing

United States v. Sherwood, 312 U.S. 584, 586 (1941)).

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993) (citing United States v. Newport News Shipbuilding & Dry Dock Co., 993 F.2d 996, 998 n.1 (Fed. Cir. 1991)). Once challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)).

If the defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction by a preponderance of the evidence. McNutt, 298 U.S. at 189; see also Taylor, 303 F.3d at 1359; Reynolds, 846 F.2d at 747; Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994). The Court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

The jurisdiction of the Court of Federal Claims is limited to congressional

waivers of sovereign immunity such as through the Tucker Act. Edelmann v. United States, 76 Fed. Cl. 376, 379 (2007). The Tucker Act provides in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (emphasis added). The Tucker Act itself does not create a right of action against the United States; "[t]herefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages." Sarang Corp. v. United States, 76 Fed. Cl. 560, 562 (2007) (citing Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004)).

Where the plaintiff's claim is based upon a contract with the Government that is subject to the Contract Disputes Act ("CDA"), that statute requires that the plaintiff comply with the mandatory exhaustion requirements "by first submitting a 'claim' to and obtaining a 'final decision' from the contracting officer." Id. (citing 41 U.S.C. § 605(a)). A "claim" is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum

certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101.

In connection with filing a claim, the United States Court of Appeals for the Federal Circuit has held "that a contractor must submit a written, non-routine demand to the contracting officer that seeks as a matter of right: payment of money in a sum certain, or an adjustment or interpretation of contract terms or other relief arising from or relating to the contract; and a final decision." Sarang Corp, 76 Fed.Cl. 564 (citing England v. The Swanson Group, Inc., 353 F.3d 1375, 1380 (Fed.Cir.2004)).

Even if this Court has jurisdiction over a plaintiff's claims, such claims must be dismissed when the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (quoting Leider v. United States, 301 F.3d 1290, 1295 (Fed. Cir. 2002).

II. This Court Does Not Have Jurisdiction Over J.O.A.'s Money Claims Regarding Its Purported Loss Of Business And Bonding Capacity

J.O.A. asserts that it is entitled to $2 million dollars to compensate it for "its loss of its business." Compl. at ¶22. It also asserts that is owed $1 million "to compensate [it] for the amount it indemnifies its Bonding Company [sic]." Id.

As stated in our discussion of the appropriate standard of review, it is black-letter law that a prerequisite of the CDA is that a contractor must first present its claims to the contracting officer. Sarang Corp., 76 Fed. Cl. at 562; 41 U.S.C.

§ 605(a).

Because J.O.A. never submitted these claims to the contracting officer, they must be dismissed.[1]

III. This Court Does Not Possess Jurisdiction Over J.O.A.'s Claim For Liquidated Damages Which Have Not Been Assessed Against J.O.A.

J.O.A. seeks "judgment in its favor against Defendant United States in the amount of $451,734.54." Compl. ¶ 28. The Government has not assessed liquidated damages against J.O.A., either through a contracting officer's final decision or through a Government counterclaim, because the construction on the project has not been completed.[2] Accordingly, the matter is not yet ripe for this Court's review.[3]

---

[1] In any event, claims for speculative loss of business income or anticipatory profits are not recoverable and, alternatively, would also require dismissal under RCFC 12(b)(6). Wells Fargo Bank v. United States, 88 F.3d 1012, 1022-23 (Fed. Cir. 1996) (denying claims for loss of business opportunities); Rumsfeld v. Freedom N. Y., Inc. v. United States, 329 F.3d 1320, 1333 (Fed. Cir. 2003) (anticipated profits associated with future contracts too remote and uncertain) (citations omitted); see also Olin Jones Sand Company, 225 Ct. Cl. 741, 743-744 (1980).

[2] The Government reserves the right to seek leave of this Court for the purpose of amending its Answer to include a liquidated damages counterclaim pursuant to 48 C.F.R. § 52.211-12, which was incorporated by reference into the contract (liquidated damages (and a one time fee for legal review) will be assessed $420 per day until project completion).

[3] If a claim is not ripe for adjudication, this Court does not possess jurisdiction to entertain the claim. Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003) (citation omitted). "A claim is not ripe 'if it is premised upon contingent future events that may not occur as anticipated, or indeed may not occur

Additionally, J.O.A. alleges, for the first time, in the Joint Preliminary Status Report filed by both parties on September 25, 2007 ("JPSR"), Document #10, that the Government is actually withholding $451,734.54 as a "retainer." JPSR at 5. To the extent that J.O.A. seeks return of any money being withheld by the Government, J.O.A. must first present such a claim to the contracting officer for a final decision. See discussion in this brief at 4-6.

IV. J.O.A.'s Claim For Increased Steel Prices Fails To State A Claim Upon Which Relief May Be Granted And Should Be Dismissed

It is equally well-settled that a contractor bears the risk for increased costs of performance in a fixed-price contract and, unless specifically contracted for, does not provide for any adjustment on the basis of the contractor's cost experience in performing the contract. 48 C.F.R. § 16.202-1. This contract type places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss.[4] Id.

On October 19, 2005, J.O.A. submitted a certified equitable adjustment claim in the amount of $811,461.77 for the purported increase of steel prices. Compl., Ex. 6. Shortly thereafter, J.O.A. amended its claim for the increased steel

at all.'" Id. (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

[4] Without belaboring the obvious, if for some reason, the price of steel had plummeted, the contractor would stand to benefit with a higher profit. The Government would not be able to demand a return of a portion of the contract price because the contractor's cost of performance dropped.

prices to $329,056. Compl., Ex. 7. On March 13, 2006, the contracting officer denied J.O.A.'s claim.

The contract at issue was a firm fixed-price, design-build, contract. Compl ¶¶ 4-5. J.O.A. does not allege that the contract contained any economic price adjustment clause, which might apply, instead J.O.A. posits that the Government should pay for these increased costs in order to do "equity." Compl., Ex. 6 at 3-4.

This Court has "consistently held that the contractor in a fixed-price contract assumes the risk of unexpected costs." ITT Arctic Services, Inc. v. United States, 207 Ct. Cl. 743, 763 (1975) (citations omitted); see also Yankee Atomic Elec. Co. v. United States, 112 F.3d 1569, 1579 (Fed. Cir. 1997) (citing United States v. Spearin, 248 U.S. 132 (1918). Moreover, it is "black letter law that the risk of increased performance costs in a firm fixed-price contract absent a clause stating otherwise, are on the contractor." Sea-Land Service, 213 Ct. Cl. 555, 560 (1977). In fact, although not binding upon this Court, a recent board of contract appeals decision, consistent with ITT Arctic Services, Inc., 207 Ct. Cl. at 763, reached the same result in a case involving fluctuating steel prices. See Appeal of Spindler Construction Corp., 2006-2 B.C.A. (CCH) P33,376 (A.S.B.C.A. 2006).

Because the contract awarded in this case was a firm-fixed price contract without an economic price adjustment clause, there was no requirement that the

Government reimburse J.O.A. for the increased price of steel or its subcontractor's increased cost, and J.O.A.'s challenge to that decision fails to state a claim upon which this Court can grant relief.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the aforementioned portions of J.O.A.'s complaint.

Respectfully,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

s/Armando A. Rodriguez-Feo
ARMANDO A. RODRIGUEZ-FEO
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-3390
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

J. Mackey Ives
Litigation Attorney
General Litigation Branch
Army Litigation Center
901 N. Stuart Street, Ste. 400
Arlington, VA 22203

April 11, 2008

CERTIFICATE OF FILING

I hereby certify that on this 11th day of April, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS, IN PART" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Armando Rodriguez-Feo