IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J.O.A. CONSTRUCTION CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-160C |
| | ) | (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, IN PART

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC"), the Government hereby responds to plaintiff JOA's opposition to our motion to dismiss, in part.

## INTRODUCTION

In count I of its complaint, J.O.A. sought recovery for alleged loss of business and bonding capacity, which in its response brief readily admits that this count should be dismissed. Pl. Opp. 1. In count II of its complaint, J.O.A. seeks $451,743.54 in purported liquidated damages, Compl. ¶¶ 23-28, which, admittedly, have never been assessed against it. In its response to our moving brief, J.O.A. attempts to recast this amount as potential contract damages. Pl. Opp. 1-2. In any case, count II should likewise be dismissed because, however characterized, there has never been a contracting officer's final decision that assessed liquidated damages against J.O.A., or that decided a J.O.A. contractor claim for payment

concerning these damages, which as we explain in our motion, is a prerequisite pursuant to the CDA. Pl. Opp. 1; Def. Mot. 6-7. Lastly, in count III, J.O.A. contends that it is entitled to $329,056 as a result of an unforeseen increase in the price of steel. Pl. Opp. 2. J.O.A. devotes most of its opposition to addressing this count. To the extent that J.O.A. is seeking additional money for increased steel prices as a matter of equity, its claim is without merit because the contract did not include an economic adjustment clause. Ex. 6 to Pl. Compl. 4. Nor could the contractual requirement that J.O.A. obtain State of Michigan approval of the design result in the Government being liable to J.O.A. for any cost increases since J.O.A. was aware of that requirement since September 19, 2003, but did not submit its 95 percent design until January 14, 2004. Ex. 5 to Pl. Compl. 2.

## DEFENDANT'S REPLY

### I. J.O.A. IS NOT ENTITLED TO CLAIM EITHER LIQUIDATED DAMAGES THAT WERE NEVER ASSESSED OR MONEY DAMAGES IT NEVER PRESENTED TO THE CONTRACTING OFFICER

As we demonstrated in our moving brief, J.O.A. cannot claim the return of liquidated damages that were never assessed against it. Def. Mot. 6.[1] Such a claim is simply not ripe for review since there has never been an assessment of such liquidated damages. Id. Indeed, the language attributed to the Government as

[1] In our moving brief, we have already refuted J.O.A.'s attempt to recast count II as a claim for improperly withheld retainage. Def. Mot. 7. J.O.A. does not directly address our argument in its response, opting instead to attempt another re-characterization of the claim as one for money damages representing the "contract

"assessing liquidated damages" was part of several pieces of correspondence, including the August 18, 2005 show cause notice which states:

> The Government is allowing you to continue work on this contract in a <u>Default</u> Status. However, by permitting you to continue performance, the Government is not waiving any of its rights under the contract. Liquidated damages in the amount of $420 per day may be assessed for each day of delay and a one-time fixed charge of $153 for legal review . . . .

Ex. 5 to Pl. Compl. 1 (emphasis in original). This is virtually identical to the language contained in the March, 2007 letter referred to by J.O.A. in its opposition. Pl. Opp. 1. J.O.A. argues that this letter was a "final" calculation for liquidated damages as of March, 2007, claiming $272,733 as the amount due to the Government based upon 649 days delay at $420.00 per day plus a one time legal fee of $153.00. Pl. Opp. 2-3. J.O.A. has no support for this argument. This document is merely a calculation of potential liquidated damages that had already accrued "as of" the date of the letter.

J.O.A. seeks to recast its claim for liquidated damages as a claim for money damages resulting from its termination. Pl. Opp. 1, 3. This alternative basis for asserting this Court's jurisdiction is equally without merit because, as we explained in our moving brief, the CDA requires that a plaintiff must first submit a claim to the contracting officer for money damages. <u>Sarang Corp. v. United States</u>, 76 Fed. Cl. 560, 562 (2007); Def. Mot. 5. Even where the court possesses jurisdiction to

---

balance."

consider a challenge to the Government's default termination, the court would lack jurisdiction to consider money claims for termination for convenience or breach absent a contracting officer's final decision upon the contractor's claims. Armour of Am. v. United States, 69 Fed. Cl. 587, 593 (2006) (while the court has jurisdiction to determine whether to convert a termination for default into a termination for convenience, it lacks jurisdiction to determine any resulting monetary damages in the absence of a contracting officer's decision on damages).

Because J.O.A. has failed to meet its burden of properly invoking this Court's jurisdiction, count II of the complaint must be dismissed for lack of jurisdiction.[2]

## II. J.O.A.'S CLAIM FOR INCREASED STEEL PRICES FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As we established in our moving brief, it is well-settled that a contractor bears the risk of increased costs of performance in a fixed-price contract that does not provide for any adjustment upon the basis of the contractor's cost experience in performing the contract. Def. Mot. 7-8. In its response, J.O.A. does not dispute that the contractor bears the risk of increased material costs in a fixed-price

[2] As noted in our moving brief, once challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). And the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction by a preponderance of the evidence. McNutt, 298 U.S. at 189; see also Taylor, 303 F.3d at 1359; Reynolds, 846 F.2d at 747; Catellus

contract, and apparently has abandoned its assertion that the Government should pay for these increased costs in order to do "equity." Ex. 6 to Pl. Compl. 4.

Instead, J.O.A. now maintains that the Government is responsible for delaying project construction, which resulted in J.O.A. having to bear higher steel costs. J.O.A. claims $329,056 for the alleged increased costs. Pl. Opp. 3-4.

J.O.A. relies primarily on three cases in support of its opposition to dismiss count III: (1) Smoot v. Sec'y of the Navy, 388 F.3d 844 (2004); (2) Essex Electro Eng'rs v. Sec'y of the Navy, 224 F.3d 1283 (2000); and (3) Sharman v. United States, 30 Fed. Cl. 231 (1994). None of these cited cases supports the proposition for which J.O.A. has cited; namely, that in a design-build contract, the Government is responsible for increased construction costs incurred by a contractor.

In Smoot, the Federal Circuit made clear that this court's de novo review extends not only to "final" decisions issued by contracting officers in response to contractor claims, but also to "interim" decisions by contracting officers, such as contract modifications, issued in response to contractor claims. Smoot, 388 F.3d at 856. J.O.A.'s reliance upon this case for the proposition that the Government is responsible for paying its increased steel costs is entirely misplaced.

Equally misplaced is J.O.A.'s reliance upon the Essex case, which stands for the proposition that delays due to Government-provided defective specifications are compensable to the contractor. Essex, 224 F.3d at 1289. In this case, J.O.A. was

---

Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994).

contracted to design and build the Total Army School System building.

Finally, the Sharman case, cited by J.O.A., involved a remand from the appellate court concerning the jurisdictional implications of the Contract Disputes Act of 1978's requirement of a final decision from the contracting officer, and it dealt with a case where the contractor, based upon unanticipated increases in steel prices, repudiated the contract and was terminated by the Government. 30 Fed. Cl. at 234. See Sharman Co. v. United States, 2 F.3d 1564, 1569 (Fed.Cir.1993), over'd on other grounds, Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed.Cir.1995).

Indeed, though not raised in our motion, Sharman counsels questioning whether the Court even possesses subject matter jurisdiction, pursuant to RCFC 12(b)(1), over the steel price claim since the original claim submitted to the contracting officer on October 19, 2005, sought an equitable adjustment to the contract price (Ex. 6 to Pl. Compl. 4) rather than money damages for breach of contract (Compl. ¶ 34), which was arguably never presented to the contracting officer.[3]

On October 19, 2006, J.O.A. sought $811,461.77 for the steel increases. Compl. ¶ 31. Subsequent to its claim, the Government directed an audit by the

[3] This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. AAB Joint Venture v. United States, 75 Fed. Cl. 414, 421 (2007) (citing, Santa Fe Eng'r v. United States, 818 F.2d 856, 859 (Fed.Cir.1987); Sharman Co., Inc. v. United States, 2 F.3d 1564, 1570 (Fed.Cir.1993) (other citations omitted)).

Defense Contract Audit Agency (DCAA). Ex. 7 to Pl. Compl. 1. The DCAA found that J.O.A.'s records did not support the claim, and, on December 29, 2005, J.O.A. reduced its claim to $329,056. The DCAA questioned this claimed amount, as well, because J.O.A. still could not adequately support it.

To put this in perspective, the purported increase in steel prices only represents approximately 2.5 percent of the total $13 million budgeted for the project – a modest increase in the overall construction price.

J.O.A. correctly points out that the contractor bears the burden of establishing Government delay. Pl. Opp. 4. But it fails to offer any meaningful support, beyond reciting this venerable principle, for its argument. Id. As noted in our motion, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955, 1964 (2007) (internal citations omitted).

And the facts demonstrate that J.O.A. was responsible for the primary delays – not the Government. For example, by September 2003, J.O.A. knew that it needed to submit its plans to the State of Michigan for approval but did not do so until January 2004. Ex. 5 to Pl. Compl. 2. In other words, J.O.A. does not establish that any of the delay was entirely attributable to the Government.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss counts I, II, and III of J.O.A.'s complaint.

Respectfully,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

s/Armando A. Rodriguez-Feo
ARMANDO A. RODRIGUEZ-FEO
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-3390
Fax: (202) 514-8624

OF COUNSEL:

J. Mackey Ives
Litigation Attorney
General Litigation Branch
Army Litigation Center
901 N. Stuart Street, Ste. 400
Arlington, VA 22203

Major John Wojcik
JAGC, U.S. Army
3411 N. Martin Luther King Blvd
Lansing, Michigan 48906

August 26, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 26th day of August, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, IN PART" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Armando Rodriguez-Feo